No. 45,284

GEORGE D. WAGSTAFF, as Trustee in Bankruptcy for the Bankrupt Estates of RUTH W. DOWLING, and RUTH W. DOWLING as Administrator of the Estate of William F. Dowling, Deceased; individually and as Partners d/b/a DOWLING ELECTRIC COMPANY, *Appellant*, v. RICHARD J. PETERS, and PETERS ELECTRIC COMPANY, INC., a Kansas Corporation, *Appellees.*

(453 P. 2d 120)

Opinion filed April 12, 1969.

*Ralph E. Skoog,* of Topeka, argued the cause, and *J. A. Dickinson,* of Topeka, was with him on the brief for the appellant.

*Ward D. Martin,* of Topeka, argued the cause, and *A. Harry Crane, Arthur L. Claussen, Harvey D. Ashworth, John R. Hamilton,* and *Donald D. Barry,* all of Topeka, were with him on the brief for the appellees.

The opinion of the court was delivered by

HARMAN, C.: This is an action by a trustee in bankruptcy to

recover money allegedly due the bankrupt estate under a sales agreement. A principal issue is whether this agreement constitutes an executory contract.

Combined with this action in the court below was a claim by the trustee to recover an alleged voidable preference paid by the bankrupts to appellee Richard J. Peters. The trial court rendered judgment for the trustee upon this cause of action, permitting him to recover the preference. No appeal was taken from that portion of the trial court's judgment and therefore we are not here directly concerned with it.

The trial court heard evidence as to the trustee's claim under the sales agreement, made extensive findings of fact and conclusions of law and rendered judgment thereon for the defendants. The trustee has now appealed.

Appellant does not challenge the sufficiency of the evidence offered to support the findings of fact; hence the record upon appeal does not include the evidence but does set forth the findings in full. We summarize those necessary to decision here.

For a number of years prior to 1957 William F. Dowling and Ruth Dowling had engaged in the electrical contracting business in Topeka under the firm name of Dowling Electric Company. In 1958 a federal tax lien of approximately $55,000 was filed against them and they had become indebted on open account to one of their major material suppliers in an amount exceeding $31,000. This supplier declined further sales to the Dowlings except upon a cash basis conducted in such a manner as to prevent the statute of limitations from running on the whole account. Substantial business was done between the two so that Dowlings' indebtedness by 1964 was reduced to $22,700. Through an agreement with the Internal Revenue Service wherein the Dowlings made monthly payments, their federal tax lien by 1964 was likewise reduced to $22,700.

Appellee Peters was employed by the Dowlings in 1947. He eventually became assistant manager of their business and was thoroughly familiar with its financial condition. In 1958 Peters undertook a side line or moonlighting business of his own under the name of Addlite Lighting Company. This consisted of cleaning fluorescent light fixtures and supplying fluorescent tubes when he was not working for Dowlings. The Addlite company was also used to make credit purchases of material which Dowlings were unable to make by reason of their credit standing.

January 28, 1964, Peters, with his wife and attorney, organized The Peters Electric Company, Inc., a Kansas corporation (appellee herein), for the purpose of carrying on an electric contracting business. January 31, 1964, The Peters Electric Company and the Dowlings entered into an agreement, which is the subject of this action, providing for the sale of Dowlings' business to Peters. We will note the contents of this agreement later, along with action taken pursuant to it.

On April 14, 1964, an involuntary petition in bankruptcy was filed against the Dowlings by its major supplier and other creditors, and on May 21, 1964, they were adjudged bankrupts. Answer, schedules and statements of affairs were filed July 28, 1964, in the bankruptcy proceeding and the Dowling-Peters contract was fully disclosed. Unsecured creditors' claims were listed as totaling more than $45,000. On August 27, 1964, appellant was appointed trustee of the bankrupt estate at which time he was directed:

"To examine all executory contracts, including unexpired leases of real property, and within sixty days from the date hereof, with the approval of the Court, assume or reject such contract and investigate all transfers of property made by the bankrupt, and take such action as may be proper, under the order of the Court, to recover any property in the hands of third persons in which the estate has an interest."

On October 16, 1964, a final discharge was issued to the Dowlings in the bankruptcy proceedings without any request or demand for an accounting for sums received under the Peters contract. On December 31, 1964, appellant sought and obtained authority from the federal district court to file a plenary action against Peters Electric in the district court of Shawnee county. May 3, 1965, appellant filed this action to recover monthly payments under the contract.

Generally speaking, section 70a of the bankruptcy act (11 U. S. C. 1964 ed. § 110[a]) vests title to all the bankrupt's nonexempt property in the trustee as of the date of the filing of the bankruptcy petition. Aside from rights in executory contracts, which are separately dealt within section 70b, this legal transfer operates automatically, by operation of law. With respect to executory contracts the transfer does not operate until the contract has been definitely adopted.

Section 70b (11 U. S. C. 1964 ed. § 110[b]) provides:

"The trustee shall assume or reject an executory contract . . . within sixty days after the adjudication or within thirty days after the qualification of the trustee, whichever is later, but the court may for cause shown extend

or reduce the time. Any such contract or lease not assumed or rejected within that time shall be deemed to be rejected. If a trustee is not appointed, any such contract or lease shall be deemed to be rejected within thirty days after the date of the order directing that a trustee be not appointed. A trustee shall file, within sixty days after adjudication or within thirty days after he has qualified, whichever is later, unless the court for cause shown extends or reduces the time, a statement under oath showing which, if any, of the contracts of the bankrupt are executory in whole or in part . . . and which, if any, have been rejected by the trustee." (p. 1914.)

From August 27, 1964, through November, 1964, appellant did not accept or file any election to assume the Peters contract. He argues section 70b has no application because the contract was not executory within its meaning; that the contract was simply a sales agreement in which the sale was completed by the bankrupts as vendors and all that remained was payment of money by appellee Peters Electric which appellant would collect for the benefit of the creditors. Appellee says the contract was executory. This brings us to consideration, first of the contract, which in pertinent part provided:

"THIS AGREEMENT made this 31 day of January, 1964, by and between W. F. DOWLING and RUTH DOWLING, dba Dowling Electric Company, party of the first part, hereinafter called Dowling, and PETERS ELECTRIC Co., INC., a corporation, party of the second part, hereinafter called Peters, WITNESSETH:

"In consideration of the convenants, promises and agreements in the payments, transfers, assignments and property hereinafter set out, the parties hereto do covenant and agree as follows:

"1. That Peters will take over and complete all contracts and jobs now in force and operation by Dowling.

"2. That Peters will pay to Dowling the actual cost on all material and actual cost plus 15% on all labor for jobs and contracts now in progress that monthly billings have not been submitted on. The 15% on labor to cover all Social Security and unemployment taxes and insurance expense for labor. The cost and amount to be paid shall be figured as of the close of business on January 28, 1964.

"3. Peters will buy from Dowling all tools and equipment at original cost less 66-⅔rds per cent and inventory at book price on the books as of the close of business on January 28, 1964. Dowling has two trucks which will be purchased by Peters at fair market value less any liens or indebtedness against such trucks. Payment for tools, equipment and trucks shall be made when all liens have been removed except that Peters shall take over the obligation on the truck which is being purchased under conditional sale contract.

    . . .

"4. Peters will perform all work necessary and required to comply with warranties on all jobs of Dowling completed the past year.

"5. Dowling will pay all bills incurred during the six (6) months preceding January 29, 1964.

"6. All accounts receivable billed by Dowling prior to January 28, 1964, shall belong to Dowling.

. . .

"8. That Dowling will release and transfer any right or interest in the lease or possession of the property at 586 Quincy Street, Topeka, Kansas, to Peters, except Dowling's right to the partitions.

"9. That Dowling will make himself available to advise and consult with Peters or its representatives and will not for a period of five (5) years from the date hereof enter into the business of an electrical contractor.

. . .

"11. That Peters will pay to Dowling or his heirs 2% of its monthly gross billings up to $18,000.00 per month of gross billings for five (5) years from the date hereof or until January 29, 1969. Peters will pay a minimum of $200.00 per month or the percentage above set out whichever is greater for the first two (2) months following the date hereof, which shall be January 29, 1964, to February 29, 1964, and March 1, 1964 to March 31, 1964. It is understood that the billings herein referred to shall mean gross billings during the calendar month and the payments to Dowling shall be made on or before the 20th day of the succeeding month. The payments by Peters to Dowling herein provided shall be in full for all services, agreements, good will, consultation, and for rent and use of tools and equipment until liens can be released and sale thereof completed."

The trial court found that in January, 1964, appellee Peters Electric had paid Dowlings certain sums of money for work in progress which sums had been used for payment of payrolls, taxes and current creditors, and also that Peters had paid Dowlings a fair price for the inventory and equipment; that out of payments received from Peters Electric pursuant to the contract Dowlings paid certain current claims but at the time of the adjudication in bankruptcy there were nine creditors of Dowlings with unpaid claims incurred within six months preceding the contract in the amount of $2,536.19; that from January 29, 1964, to and including August, 1964, William F. Dowling performed services by consulting with Peters, contacting customers and assisting in performance of warranties on work of Dowlings; following the death of William F. Dowling September 27, 1964, Ruth W. Dowling worked at the office of Peters Electric until July, 1965; she was paid at the rate of $1.50 per hour; Peters made monthly payments to the Dowlings based upon a percentage of the volume of business until this suit was filed; one of the bills paid by the Dowlings under paragraph 5 of the contract was to Richard J. Peters individually, doing business

as the Addlite Lighting Company, in the amount of $6,445.33 (the voidable preference referred to earlier which was recovered by appellant in this action).

The trial court concluded the contract was executory and that it had not been timely assumed by the trustee.

Section 70b of the bankruptcy act refers broadly to "executory contracts" and makes no distinction between types and classes of contracts so long as they have not been executed and remain executory.

Whether a contract is executory is generally to be determined by applicable state law so long as state concepts of contractual rights do not operate to defeat the basic purpose of the bankruptcy act (see 2 Remington on Bankruptcy, 1968 Supp. § 1141; Mac-Lachlan on Bankruptcy, § 117). The term "executory" has been defined as that which remains to be carried into operation or effect, incomplete; depending upon a future performance or event (34 C. J. S., Executory, p. 1376). An executory contract is one the obligation of which relates to the future. A contract may be partly executed and partly executory (17 C. J. S., Contracts, § 7). Section 70b contemplates contracts executory either in whole or in part. In Black's Law Dictionary, 4th ed., p. 395, an executory contract is distinguished from an executed contract as one where some future act is to be done. However, a contract is not executory merely because it has not been fully performed by payment, if all the acts necessary to give rise to the obligation to pay have been performed (2 Remington on Bankruptcy, rev. ed., 1956, § 1141).

The problem sometimes presented by the use in section 70b of the broad term "executory" is discussed in 4A Collier on Bankruptcy, 14th ed., § 70.43[2] as follows:

"The legislative purpose back of § 70b is to solve the problem of *assumption of liabilities.* It is conceivable that a system of bankruptcy law might compel the nonbankrupt party to a contract, the performance of which is incomplete as to both contracting parties, to continue performing while for the counterpart refer him to a mere dividend out of the estate. Needless to say, such a solution is neither wise from the viewpoint of commercial credit, nor fair from the viewpoint of equity. It neglects one of the basic principles of equity, mutuality of obligation and performance. What § 70b actually proposes to do is precisely to secure this continued mutuality wherever it is felt to be of greater benefit to the estate to proceed in accordance with the bankrupt debtor's plans rather than to freeze his commercial relations as of the filing date. The price for securing the potential margin of benefit to the estate is high. It is nothing short of complete mutality, that is, assumption by the estate of the bankrupt's

liabilities, not as a matter of granting a distributive share, but by performance in full, just as if bankruptcy had not intervened."

Appellant seems to take the position all he need do under the contract is to receive the payments from Peters specified under paragraph 11 of the agreement. We cannot agree. This contract involved future performance on the part of both the Dowlings and Peters Electric. Specifically, on the part of Peters, at the time of Dowlings' adjudication in bankruptcy as found by the trial court, there remained for it to make good on contract warranties of Dowlings, to complete Dowlings' contracts, to pay the balance due on a note and mortgage owing by Dowlings, and to pay Dowlings the balance due for tools and equipment and the monthly payments specified in paragraph 11. There remained for the Dowlings to pay the bills incurred during the six months preceding January 29, 1964, and to make themselves available to advise and consult with Peters and not enter into the business of an electrical contractor. Referring back to the first item to be done by Dowlings, several bills had not been paid, the largest of which was the $6,445.33 item owing to Richard J. Peters individually, which payment the trustee has now recovered back as a voidable preference. Payment of these bills necessarily was a substantial part of the consideration of the contract. As to the second item—services by the Dowlings—it is true Mr. Dowling died shortly after the contract was entered into but Mrs. Dowling remained bound and from the limited record we are unable to say her services were insignificant to the mutuality of the contract.

We think the contract was more than a mere completed sale giving rise only to an obligation to pay a particular sum of money and we agree with the trial court's conclusion it was executory in part at the time of the adjudication in bankruptcy.

As indicated, appellant filed no acceptance of the contract or election to assume it within the statutory period of time (here sixty days from August 27, 1964, as allotted by the court). The record is devoid of notice of any kind to appellees within this period that appellant was assuming the contract or of any showing of action by him from which such assumption could be inferred. In 4A Collier on Bankruptcy, 14th ed. § 70.43, we find this discussion:

"[3]—Privilege and Duty to Assume or Reject.

"A contract which at the filing date was not completely performed by either the bankrupt or the other contracting party confronts the trustee with

the alternative to assume or to reject it. . . . § 70b gives the trustee an option to substitute himself for the bankrupt by 'assuming' the contract. It makes it his duty within a prescribed period of time either to assume or reject, without, however, attaching any immediate sanction to a failure to elect except the operation of *a conclusive statutory presumption that such failure amounts to a rejection*. . . .

"[4]—Time for Assumption or Rejection.

"The trustee is allowed sixty days after adjudication or thirty days after qualification, whichever is the later, to assume or reject executory contracts, subject, however, to the right of the court to extend or reduce the time for cause shown. . . . Clearly, the time limitations have been inserted largely for the benefit of the other contracting party, and creditors who expect a benefit from the assumption of a contract should be on their guard to secure any necessary extension and to submit satisfactory evidence to show the desirability of protracted deliberation. On the other hand, the other party to the contract, for whose benefit the time limitations have been imposed, may oppose any motion to extend the period by showing that any such extension would result in an unwarrantable inconvenience to him, if not in actual damage. . . .

"[6]—Necessity for Notification of Other Party Upon Assumption.

"*Assumption of a contract is an act requiring notification of the party concerned. The trustee cannot assume merely in his own mind. He must notify the other party,* and the time limit imposed in § 70b for assumption must be understood to cover the interval between adjudication and notification of the other party to the contract. No particular form of notification is provided. A written or even an oral notice should be deemed sufficient. . . .

"[7]—Duty to Report Existence of Executory Contracts and Rejections Thereof.

"Although this has been noted previously, it should be emphasized that § 70b imposes upon the trustee the duty to report to the court regarding all contracts which on the bankruptcy filing date were 'executory in whole or in part,' and also which of these contracts have been rejected by him. The report is to be made by filing a statement under oath within sixty days after adjudication, or within thirty days after he has qualified, whichever is later or within such longer or shorter period as the court may for cause shown prescribe. . . . This duty, together with *the conclusive statutory presumption that executory contracts not so rejected within the prescribed time are deemed rejected,* emphasizes the protection of the other party to the contract who may then elect to treat the advent of bankruptcy as an anticipatory breach.

"[10]—Effects of Assumption or Rejection.

". . . It is the main purpose of § 70b to clarify at the earliest possible moment the mutual relations of the contracting parties." ( Our emphasis. )

From all of the foregoing, which is well supported by case law, the rule appears to be that where a trustee fails to elect within the statutory period of time as to whether to assume or reject an executory contract, he is conclusively presumed to have rejected

the contract. We hold here the appellant by his inaction within the statutory period rejected the contract. Under this determination we need not consider whether his recovery back as a preferential payment of the item paid Addlight in itself constituted a rejection of the contract nor need we speculate as to appellant's ability, both in fact and in law, to perform the burdens of the contract were he permitted to assume it.

Interspersed through appellant's argument is the contention it would constitute a fraud upon Dowlings' creditors if he is not permitted to assume the contract. The record does not support this premise. The contract itself has never been challenged as being fraudulent or illegal and it remains a valid agreement. In addition, the trial court specifically found the transaction by reason of the contract did not diminish the assets available to Dowlings' general creditors.

We find no error in the judgment appealed from and it is affirmed.

APPROVED BY THE COURT.