In re **ROVINE CORPORATION,**
**Debtor–in–Possession.**

**BURGER KING CORPORATION,**
**Plaintiff,**

v.

**ROVINE CORPORATION, Defendant.**

Bankruptcy No. 80–21253.
Adv. No. 80–0248.

United States Bankruptcy Court,
W. D. Tennessee, W. D.

Oct. 22, 1980.

See also, Bkrtcy., 5 B.R. 402.

Kent Wunderlich, Memphis, Tenn., for plaintiff.

Preston Wilson, Memphis, Tenn., for defendant.

## MEMORANDUM OPINION

WILLIAM B. LEFFLER, Chief Bankruptcy Judge.

### I

This cause came on to be heard upon a Motion for New Trial or to Amend Judgment filed by the plaintiff, Burger King Corporation, pursuant to Rule 923 of the Rules of Bankruptcy Procedure.

On May 2, 1980 the defendant filed a petition under Chapter 11 of the Bankruptcy Code. Since that time the debtor has continued in possession of its property and has continued to operate its business without the intervention of a trustee. At the time of the filing, the defendant was a franchisee of the plaintiff, Burger King Corporation. On May 13, 1980, the plaintiff filed an application with the Court asking that the defendant be compelled to adopt or reject the franchise agreement as an executory contract under § 365(d) of the Bankruptcy Code.* On July 18, 1980, the defendant rejected the franchise agreement. On July 28, 1980, the plaintiff filed a com-

---

\* The power of a Chapter 11 debtor in possession to assume or reject executory contracts stems from § 1107 of the Code which grants such a debtor the rights and powers of a Chapter 11 trustee. One power of a trustee is the power to assume or reject executory contracts under § 365.

plaint with the Court seeking to enforce a covenant not to compete contained in the rejected franchise agreement. The covenant not to compete provided that upon termination of the franchise agreement and for a period of 18 months thereafter, the defendant would not engage in any business which was the same or similar to the plaintiff's business in a location within a 5–mile radius of the franchise premises.

On August 4, 1980, the Court entered a Memorandum Opinion holding that: (1) the covenant not to compete was executory in nature; (2) said covenant was rejected as a part of the defendant's prior rejection of the franchise agreement; and (3) the effect of rejection was to relieve the defendant and its estate of the obligations imposed via the covenant not to compete. The Court therefore refused the plaintiff's request for a temporary injunction. See *In re Rovine Corporation*, Bkrtcy., 5 B.R. 402 (1980). The plaintiff filed its instant motion on August 12, 1980, asking that the Court amend its prior judgment in this cause and grant the plaintiff's request for a temporary injunction enforcing the covenant not to compete.

## II

The plaintiff notes that the rejection of an executory contract not previously assumed gives rise to a claim against a debtor's estate under § 502(g) of the Bankruptcy Code. However, the plaintiff also notes that the definition of "claim" under § 101(4) of the Code excludes a right to an equitable remedy for breach of performance if such breach does not give rise to a right of payment. The plaintiff alleges that its remedy against the defendant is that of injunction and that the franchise agreement does not provide for monetary damages. Therefore, there is no right to payment that is a necessary element of the Code's definition of "claim". From these observations the plaintiff contends that Congress intended to retain the right of a nonbankrupt party to enforce covenants not to compete.

The plaintiff further contends that the covenant not to compete is fully executed in that it constituted an obligation of the defendant which immediately followed the termination of the franchise agreement. As such, the plaintiff contends that the covenant in question is a divisible part of the franchise agreement and may still be enforced via injunction notwithstanding the defendant's previous rejection under § 365 of the Code.

Finally, the plaintiff proposes an alternative argument. Despite the fact that it was the plaintiff's motion which brought about the defendant's rejection of the franchise agreement as an executory contract, the plaintiff now contends that the franchise agreement taken in its entirety is not an executory contract in the bankruptcy sense. As a basis for this alternative contention the plaintiff argues that the grant of a franchise is comparable to a license. The plaintiff would have this Court hold that as a license the franchise agreement was performed in material part by the plaintiff upon the granting of the franchise to the defendant and the agreement was, therefore, fully executed on the part of the plaintiff at that point, except for certain duties the plaintiff describes as administrative and therefore nonmaterial.

## III

This Court's decision to reconsider the instant case is further evidence of problems various courts have encountered in their struggle to define the term "executory contract" as used in the bankruptcy context. In this Court's prior decision, the Court considered only the covenant not to compete and the question of whether it was an executory provision of the franchise agreement. The question of the executory nature of the remaining provisions of the franchise agreement was not an issue. Now upon further reflection and in light of the plaintiff's contention that the agreement was fully executed on its part, the Court feels that the franchise agreement must be viewed in its entirety in order to decide the question of its executory nature.

## IV

The primary issues to be considered by the Court are as follows:

(1) Was the franchise agreement an executory contract within the meaning of § 365 of the Bankruptcy Code, and therefore subject to rejection by the defendant?

(2) If the franchise agreement was an executory contract under § 365, did the rejection of said agreement relieve the defendant and its estate of the obligations of the covenant not to compete, or may the plaintiff still enforce said covenant notwithstanding rejection?

## V

Probably the most comprehensive analysis of the term "executory contract" as used in the bankruptcy context is found in Professor Vern Countryman's two–part article appearing in 47 Minn.L.Rev. 436 (1973) and 58 Minn.L.Rev. 479 (1974). This article concerns executory contracts under § 70(b) of the Bankruptcy Act, the statutory predecessor to § 365 of the Bankruptcy Code.

Professor Williston in his work on contracts has stated that, "all contracts to a greater or lesser extent are executory. When they cease to be so, they cease to be contracts." 1 S. Williston, Contracts § 14 (3d ed. 1957). However, Professor Countryman notes that such an "expansive meaning can hardly be given to the term (executory contract) as used in the bankruptcy sense. Rather the term "executory contract" should be defined "in the light of the purpose for which the trustee is given the option to assume or reject." 57 Minn.L. Rev. 439, 450 (1973). Or in the words of the 6th Circuit Court of Appeals:

> "The key, it seems, to deciphering the meaning of the executory contract rejection provisions, is to work backward, proceeding from an examination of the purposes rejection is expected to accomplish. If those objectives have already been accomplished, or if they can't be accomplished through rejection, then the contract is not executory within the meaning of the Bankruptcy Act." *In re Jolly,* 574 F.2d 349, 351 (1978).

Professor Countryman goes on to analyze relevant court decisions on the subject of executory contracts in bankruptcy and states that that term does not encompass contracts fully performed by the nonbankrupt party, where the bankrupt party has only partially performed or not performed at all. 57 Minn.L.Rev. 439, 451 (1973). Nor does the term encompass contracts fully performed by the bankrupt party, but not fully performed by the nonbankrupt party. 57 Minn.L.Rev. 439, 458 (1973). The term executory contracts, however, does cover contracts where the obligations of both parties remain at least partially and materially unperformed at the time of bankruptcy. 57 Minn.L.Rev. 439, 460–461 (1973). The definition of executory contract offered by Professor Countryman and adopted by many courts is as follows:

> "A contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." 57 Minn.L.Rev. 460 (1973).

As an example of a case involving an executory contract under § 70(b) of the Bankruptcy Act, Professor Countryman cites *Wagstaff v. Peters,* 203 Kan. 108, 453 P.2d 120 (1969). This case involved a contract for the sale of a bankrupt's business. At the time of bankruptcy the buyer remained liable for a part of the purchase price and the bankrupt sellers remained obligated: (1) to pay certain accounts payable; (2) to advise and consult with the buyers; and, as in the instant case, (3) not to enter into a competing business. The trustee had failed to assume this contract within the time specified in § 70 of the Act. When the trustee subsequently brought an action against the buyers on the contract, the court in *Wagstaff* held that: (1) the contract was executory in nature because it involved future performance on both the buyer's and seller's part and (2) the entire contract was conclusively presumed to be rejected due to the trustee's failure to affirm within the allotted time.

As noted previously the plaintiff compares the instant franchise agreement to a license and contends that as a license the agreement was fully performed by it at the time of the execution or the agreement. A franchise agreement is in many respects similar to a license. In the typical franchise agreement a company (the franchisor) owns a trademark or trade name which it licenses to others (the franchisees) to use upon the condition that the franchisees conform their business to standards established by the franchisor. *Evans v. S. S. Kresge Co.*, 394 F.Supp. 817, 844 (W.D.Pa.1975). The franchise agreement between the plaintiff and defendant conforms to this general description. The plaintiff licensed the use of its systems, service marks, and trade marks to the defendant in return for the payment of a franchise fee. These mutual obligations were fully performed by both parties at the time of the Chapter 11 filing. During the term of the agreement the defendant agreed inter alia to make specified royalty payments to the plaintiff and also agreed not to compete with the plaintiff during the term of the agreement and for a specified time thereafter. These obligations remained to be performed by the defendant at the time of the filing. If there remained no other obligations or promises to be performed by the plaintiff under the term of the agreement, the contract in question would probably be executed in that the plaintiff would have fully performed prior to the filing date. However, this is not the case. The plaintiff agreed during the term of the franchise agreement to "use its best efforts to maintain the high reputation of Burger King Restaurants and in connection therewith to make available to franchisee" other services of the company. (Pages 2 and 3 of the Franchise Agreement.) The promise to make available these additional services was an obligation of the plaintiff that remained to be performed as of the filing date. In general these services included advising and consulting with the defendant in regards to merchandising, marketing, advertising research, special recipe techniques, food preparation, new restaurant services and other operational develop-

ments subsequently devised by the plaintiff. In essence the plaintiff agreed to continue to advise and consult with the defendant concerning the operation of its franchise and to afford said defendant the benefit of its expertise in the restaurant field as such aid was needed by the defendant. As is the case of most franchise agreements, the instant agreement required a continuing cooperative effort between franchisor and franchisee. See, *Evans v. S. S. Kresge Co.*, supra.

Returning to the plaintiff's license analogy, Professor Countryman in part two of his article discusses the executory nature of patent licenses and states:

> "*The usual patent license, by which the patentee–licensor authorizes the licensee to exercise some part of the patentee's exclusive right to make, use and vend the patented item in return for payment of royalties, ordinarily takes the form of an executory contract.* A license simply to use patented equipment is typically a part of an agreement by which the equipment is leased to the licensee in return for royalty payments. Such an agreement is clearly within the Bankruptcy Act's concept of an executory contract. A license merely to use a consumable patented product necessarily provides for the supplying of the product to the licensee. If the patentee–licensor is in any way responsible for supplying the product, the contract is executory. The same is true of a license to sell patented products manufactured by the patentee–licensor."

"Where there is no express undertaking by the licensor, the agreement with the licensee may not be executory because the licensor may have fully performed merely by executing the license agreement. Thus a close question may be presented by a license to make and sell a patented products where another licensee undertakes to apply the product. Even in these close cases, however, there may be an implied undertaking by the licensor which brings all patent licenses within the ambit of an executory contract. It

has been held in a patentee–licensor's infringement action against a third party that a final judgment adjudicating the patent invalid constitutes a "complete failure of consideration" amounting to an "eviction" which releases the licensee from any further obligation to pay royalties. Moreover, since the death of the doctrine of "licensee estoppel," the licensee can set up the invalidity of the patent as a defense when sued by the licensor for royalties due under the license. Hence, all patentee–licensors are now substantially in the position of having warranted to their licensees the validity of their patents. Although the sanction for the breach of such a warranty is only forfeiture of royalties rather than liability for damages, *this continuing undertaking by the licensor is enough to justify the treatment of all unexpired patent licenses as executory contracts."* (Emphasis added) 58 Minn.L.Rev. 479, 501–502 (1974).

The Court is of the opinion that Professor Countryman's comments regarding patent licenses are applicable to the instant franchise agreement. The aforesaid comments recognize the interests of a licensee or franchisee in the continuing undertaking of the licensor or franchisor to cooperate in the operation of the franchised business and to insure that the license or franchise will not be infringed upon by third parties. These undertakings on the part of the instant plaintiff remained unperformed after the Chapter 11 filing and constituted a part of the consideration for the defendant's obligations under the franchise agreement. In other words, the franchise agreement in question was unperformed in material part by both the plaintiff and defendant as of the filing date of the defendant's Chapter 11. Therefore, the Court holds that said agreement was an executory contract within the meaning of § 365 of the Code and as such was subject to rejection by the defendant.

## VI

■ The remaining issue to be decided concerns the survivability of the covenant not to compete. The precise question may be phrased as follows: May a party to an executory contract, rejected by a debtor–in–possession pursuant to § 365 of the Bankruptcy Code, compel enforcement of a provision of that contract which restrains said debtor from competing with that party? The Court must answer this question in the negative. An executory contract must be rejected in its entirety or not at all. *In re Klaber Bros., Inc.,* 173 F.Supp. 83 (S.D.N.Y.1959). It must be remembered that the purpose of both § 70(b) of the Act and § 365 of the Code is to allow the rejection of executory contracts which are burdensome to the estate and the assumption of executory contracts which would benefit the estate. These sections were intended to solve the problem of assumption of liabilities, i. e., excusing or requiring future specific performance by the debtor depending upon assumption or rejection. 4A, *Collier on Bankruptcy,* Par. 70.43(2), Page 523 (14th ed.); 2 *Collier on Bankruptcy,* Par. 365.01, pages 365–9 through 365–10 (15th ed. 1979). The effect of rejection is to relieve a debtor and its estate of the obligation imposed under an executory contract. *In re Middleton* 3 B.R. 610, 613 (B.Ct.E. D.Pa. 1980). In the instant case the covenant not to compete was a part of the franchise agreement. Since the franchise agreement has been rejected by the defendant as an executory contract, the covenant not to compete must also be deemed rejected. The Court, therefore, must deny the plaintiff's request that the Court's prior judgment in this case be amended and must also refuse the plaintiff's request for a temporary injunction.

## VII

■ The Court must also disagree with the plaintiff's contention that it has no claim against the defendant's estate as that term is defined in § 101(4) of the Code. § 502(g) specifically grants the plaintiff a nonadministrative claim based upon the rejection of the franchise agreement. Any damages incurred by the plaintiff as a result of the rejection would constitute a

"right to payment" sufficient under § 101(4). In fact the plaintiff has filed a proof of claim in the amount of $528,295.02.

## VIII

The above constitutes this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 752.

Counsel for the defendant is instructed to enter an order consistent with the Court's Memorandum Opinion.