**In re The RECORD COMPANY, INC., Debtor.**

**The RECORD COMPANY, INC., Plaintiff/Respondent,**

v.

**BUMMBUSINESS, INC. and David F. Myers, Individually and as President of Bummbusiness, Inc., Defendants/Petitioners.**

Bankruptcy No. IP80–182RA.

Adv. Proceeding No. 80–818.

United States Bankruptcy Court, S. D. Indiana, Indianapolis Division.

Dec. 9, 1980.

As Amended Jan. 9, 1981.

John J. Petr, Kroger, Gardis, & Regas, Indianapolis, Ind., for plaintiff/respondent.

R. Larry Helmer, Helmer & Nelson, Indianapolis, Ind. and Carmel, Ind., for defendants/petitioners.

## ENTRY ON DEFENDANTS' PETITION FOR TIME LIMITATION TO ASSUME OR REJECT EXECUTORY CONTRACT

ROBERT L. BAYT, Bankruptcy Judge.

Defendants (hereinafter "Bummbusiness" and "Myers", respectively) have filed a petition seeking a limitation of time within which plaintiff (hereinafter "The Record Company") must assume or reject an executory contract. That contract, for the sale of a retail record business, is the transaction out of which the substantive claims and counterclaims of this adversary proceeding originate. In ruling on the instant petition, the court must decide at the threshold whether that contract is still executory, or if it has been so far performed as to relegate defendants to filing a proof of claim for damages.

Defendants have attached a copy of the "Agreement to Purchase" to their petition of October 15, 1980, as Exhibit A thereof. Basically, the contract provides that The Record Company is to buy all of the

assets and inventory of Bummbusiness and Lionshare, Inc. and will be assigned three retail outlet leases.[1] In exchange, The Record Company is to pay $20,000.00 in two $10,000.00 installments, one of which it allegedly paid before filing its Chapter 11 petition. The Record Company also agrees to assume Bummbusiness' debts, which total some $380,000.00. In addition, Bummbusiness is to perform other duties under the contract, which will be referred to *infra*.

"Executory contract" is not defined in either § 101 or § 365 of the Bankruptcy Code,[2] nor was there a statutory definition in the Bankruptcy Act of 1898. Development of this concept has therefore been a result of case decisions. One of the most recent such definitions, and the one controlling on this court, is that found in *Bankers' Trust Co. v. Gibbons (In re Chicago, Rock Island, & Pacific R.)*, 604 F.2d 1002 (7th Cir. 1979). Chief Judge Fairchild, quoting a distinguished commentator on the subject, defined an executory contract as " '[one] under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other.' " *Id.* at 1004, *quoting* Countryman, *Executory Contracts in Bankruptcy* (Part I), 57 Minn.L. Rev. 439, 460 (1973). The court is of the view that the instant contract fits this definition. The Record Company, for its part, is still obliged to pay Bummbusiness and Lionshare another $10,000.00 and to keep paying on the $380,000.00 trade debt. These obligations would not, standing alone,

make the contract executory. They assume greater significance, however, when viewed in conjunction with the performance of Bummbusiness still outstanding. Those obligations include not competing with The Record Company for two years within a fifty-mile radius of any of the latter's stores;[3] using its best efforts to obtain extensions of due dates for trade debt;[4] granting access to Bummbusiness' corporate records;[5] and providing The Record Company with an itemized bill of sale.[6] The sum total of performance outstanding by both parties distinguishes this case from *United States v. Flynn (In re Forney)*, 299 F.2d 503 (7th Cir. 1962), where the performance (i. e., sale of farm property free of a mortgage) had been completed and only the naked obligation to pay remained. Rather, it is more analogous to the situation in *Wagstaff v. Peters*, 203 Kan. 108, 453 P.2d 120 (1969). There the buyer still had to pay part of the purchase price, the seller had noncompetition and consulting covenants to perform, and he was also obligated to pay off certain accounts receivable. While the factual situations of the two cases do not exactly match, the court holds that the performances required are sufficiently similar to make the instant purchase agreement executory, as was the agreement in *Wagstaff*.

Bummbusiness has an additional obligation which reinforces the court's ruling, that of obtaining the landlords' consent to assignment of the three retail store leases. If such consent is required by the leases' terms, obtaining it would be a crucial element of Bummbusiness' performance;[7]

---

1. Myers was president and sole shareholder of both corporations; however, Lionshare is not a party to this adversary proceeding.

2. Pub.L.No.95–598, 92 Stat. 2549 (1978), *codified in part at* 11 U.S.C. § 101 *et seq.* (1979) (hereinafter "Bankruptcy Code" or "Code").

3. Agreement to Purchase, Art. II, § 10, at 4.

4. *Id.*, Art. II, § 12, at 5.

5. *Id.*, Art. II, § 13, at 5.

6. *Id.*, Art. II, § 5, at 3; Art. III, § 6 at 6.

7. That performance would be required under the following sections of Article III of the agreement, at 6:

> *Section 1.* Seller will execute such documents as may be necessary to transfer ownership of all corporate assets to Buyer, and to otherwise accomplish the purposes and intent of this Agreement.
>
> \* \* \* \* \* \*
>
> *Section 6.* On the effective purchase date, or within a reasonable time thereafter, Seller shall furnish Buyer with an itemized and duly executed Bill of Sale or other acceptable evidence of title and ownership of the corporate assets, assignments, and such other docu-

without it, the assignments would be voidable at the landlords' option. *See Miller v. Ready,* (1915) 59 Ind.App. 195, 108 N.E. 605; 18 I.L.E. *Landlord and Tenant* § 84. Bummbusiness has argued in its brief that consent was required, and The Record Company has not argued to the contrary. The court therefore so finds, and for that reason, as well as those discussed *supra,* rules that the "Agreement to Purchase" is an executory contract which The Record Company may assume or reject. Defendants' petition is therefore proper, and the court hereby GRANTS the same. The court notes from its records that debtor filed its petition on January 16, 1980. Since it has by this time had ample opportunity to apprise itself of its business position, and because of the potential for irreparable harm to Bummbusiness from lost holiday-season revenues, the court is of the view that protracted deliberation by The Record Company should not be necessary and is undesirable. The court therefore gives The Record Company five days from the date of this entry to assume or reject the "Agreement to Purchase" in conformity with § 365 of the Code.

### ENTRY ON PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIM

Since the contract is executory, it follows that Count I of defendants' counterclaims,[8] for breach of contract alleging $380,000.00 in damages, is premature. If the contract is assumed, defendants will have suffered no damage; if it is rejected, that rejection constitutes a beach relating back to immediately before the petition's filing by virtue of § 365(g)(1) of the Code. Defendants' remedy under those circumstances is to file a proof of claim. Counterclaim I is therefore untimely and improper in form, and, pursuant to The Record Company's Motion to Dismiss of November 4, 1980, is hereby DISMISSED.

Counterclaim II is also in improper form. It is a count for fraud and asks $100,000.00 in punitive damages. Causes of action for fraud, denominated as such, are not recognized in bankruptcy; defendants' remedy lies by way of a complaint to determine dischargeability of a debt under § 523(a)(2). Even if the counterclaim were in proper form, the damages sought cannot be granted. It is a well-established principle of bankruptcy that damages granted on nondischargeability complaints for obtaining money by false pretenses are limited to funds actually obtained by the representation. Consequential damages are not included, nor are punitive damages. Since the relief sought cannot be granted by a bankruptcy court, plaintiff's Motion to Dismiss is again sustained. Counterclaim II is DISMISSED.

Lastly, The Record Company has also sought, in the same Motion to Dismiss, that Myers be dropped as a counterclaimant because he is not a real party in interest. The court notes from the "Agreement to Purchase" that Myers is the sole shareholder of both Bummbusiness and Lionshare. If the counterclaim's allegations prove true, any damages suffered from The Record Company's rejection of the contract or alleged fraud would directly affect Myers' property interest, which is identical with Bummbusiness'. The court therefore rules that, in the event the "Agreement to Purchase" is rejected, that Myers will be allowed to file a claim along with Bummbusiness. Myers may also join in the amendment of the fraud counterclaim if he so desires. However, defendants' proof of claim or joint counterclaim may not aggregate more than the actual damage sustained; multiple recovery will not be permitted.

ALL OF WHICH IS ORDERED this 9th day of December, 1980, at Indianapolis, Indiana.

---

ments required hereunder to transfer corporate ownership to Buyer.

**8.** Filed October 15, 1980.