In re STEAKS TO GO, INC., Debtor.

Bankruptcy No. 98–47323–172.

United States Bankruptcy Court,
E.D. Missouri,
Eastern Division.

Sept. 29, 1998.

District Counsel, IRS, Special Assistant U.S. Attorney, St. Louis, MO.

Department of Revenue, State of Missouri, Office of General Counsel, Jefferson City, MO.

Robert E. Eggmann, Copeland, Thompson & Farris, Clayton, MO, for Debtor.

Norman W. Pressman, Greensfelder, Hemker & Gale, St. Louis, MO.

Richard W. Engel, Armstrong, Teasdale, Schlafly & Davis, St. Louis, MO.

## ORDER

JAMES J. BARTA, Chief Judge.

This Order concerns the motion of Steaks To Go, Inc. ("Debtor") to reject certain franchise agreements. The trial of the contested motion to reject was commenced on September 3, 1998 and concluded on September 4, 1998. By agreement, the trial was consolidated with the hearing on the Debtor's separate motion for a preliminary injunction in Adversary Proceeding No. 98–4191. A separate Order has been entered in the Adversary Proceeding, denying the request for an injunction to stay non-bankruptcy proceedings against the Debtor's officers.

This is a core proceeding pursuant to Section 157(b)(2)(A, O) of Title 28 of the United States Code. The Court has jurisdiction over the parties and this matter pursuant to 28 U.S.C. §§ 151, 157 and 1334, and Rule 9.01 of the Local Rules of the United States District Court for the Eastern District of Missouri.

At the consolidated hearing, the Debtor and the Respondent, Steak–Out Franchising, Inc. ("Franchisor"), presented testimony, exhibits and oral argument in support of their respective positions. The following findings of fact and conclusions of law are based upon a consideration of the record as a whole.

Steak–Out Franchising, Inc. is a franchiser of steak, burger and chicken delivery restaurants. The Franchisor or its corporate predecessor, have operated such restaurants for approximately 12 years. Among other things, franchisees receive a four-volume Confidential Operations Manual that includes a Marketing Manual, Training Manual and Catering Manual. Franchisees are allowed to use Steak–Out's trademarks and symbols in the operation of the businesses.

The franchise agreement provides that the franchisee will, among other things, operate the franchised business in conformity with the uniform methods, standards and specifications as prescribed by the Franchisor. The agreements in this matter include further provisions concerning the standards of operation, advertising and marketing, the preparation of statements and records, and covenants not to engage in a competing business.

In mid–1992, Arthur Hirons and William McIntyre ("Officers") approached the Franchisor concerning the possibility of becoming Steak–Out franchisees. Between July, 1992 and November, 1994, these Officers entered into three franchise agreements on behalf of the Debtor, Steaks To Go, Inc. The three agreements, numbered 1701, 1703 and 1704 were to extend for a period of ten (10) years after execution by the Parties, unless previously terminated according to other provisions in the documents.

The Parties agreed that the Debtor twice defaulted under the terms of the agreements when it failed to pay sales taxes to the State of Missouri in 1997 and 1998. The Franchisor has argued that as a result, the agreements terminated prior to the commencement of this case.

> The occurrence of any one or more of the following events shall constitute an event of default and grounds for termination of this Agreement by Franchisor: .... (v) if Franchise Owner receives from Franchisor two (2) or more notices to cure the same or similar defaults or violations of this Agreement during any twelve (12) month period, or six or more notices to cure any default or violation of this Agreement during the term hereof ....

***Plaintiff's Exhibit 1, Franchise Agreements,*** para. 13(v), pg. 27; ***Plaintiff's Ex-***

*hibits 2 and 3, Franchise Agreements,* para. 14(v), pg. 31.

The 1997 taxes were paid by the Debtor after receipt of a notice of default that had been transmitted by the Franchisor. On June 9, 1998, the Franchisor mailed two notices of default to the Debtor in reference to delinquent 1998 taxes. Each notice directed the Debtor to provide certain documentation to the Franchisor within thirty days after receipt of the notices. On July 8, 1998, prior to the expiration of the thirty-day period, the Debtor filed the Petition for Relief under Chapter 11 that commenced this reorganization case. On July 2, 1998, the Franchisor had mailed a notice of termination of the Unit Franchise Agreement that referred to Unit No. 1701, and a separate notice of termination that referred to Unit No. 1703. No notice of termination was given with respect to Unit No. 1704.

The Debtor has argued that for various reasons, the Franchise Agreements did not terminate prior to the commencement of this case, and that therefore, they are subject to rejection as executory contracts under Bankruptcy law. If the Agreements terminated prior to the commencement of the case, the Debtor, the Debtor's owners, and all members of their immediate families are subject to certain covenants not to compete for a period of two years after such termination, expiration or non-renewal of the franchises. *Plaintiff's Exhibit 1 ¶ 11(b), p. 20; Plaintiff's Exhibits 2 and 3, ¶ 12(b), p. 24.* The Debtor has argued, however, that if postpetition rejection of the Franchise Agreements is allowed, it must include rejection of the entire agreements, including the covenants.

■ It has become generally accepted that franchise agreements that have not terminated as of commencement of a case are executory contracts under the Bankruptcy Code. See *Krebs Chrysler–Plymouth, Inc. v. Valley Motors, Inc. (In re Valley Motors, Inc.),* 141 F.3d 490, 496 (3rd Cir.1998). *In re Klein,* 218 B.R. 787 (Bankr.W.D.Pa.1998); *In re Printronics, Inc.,* 189 B.R. 995 (Bankr. N.D.Fla.1995). The covenants that appear within the body of the Franchise Agreements here, and those that are referenced in the

documents captioned "Guaranty of Franchisees Undertakings" are not separate agreements. They are part of the Franchise Agreements. Therefore, in this case, if they had not terminated, the entire Franchise Agreements are executory contracts in the Bankruptcy case.

■ A trustee or a debtor in possession, subject to the Court's approval, may assume or reject any executory contract of the debtor. 11 U.S.C. § 365(a). In the circumstances presented here, none of the three Franchise Agreements between these parties had terminated prior to the commencement of this case. The record has shown that the circumstances surrounding the 1997 and 1998 defaults were similar. In 1997, the Debtor had paid the delinquent taxes upon notice of default from the Franchisor. A similar notice procedure was employed by the Franchisor in 1998. Notwithstanding the two-occurrence language of the Franchise Agreements, the Franchisor's notice of default is confusing, and misleading to the extent that it refers to an incorrect paragraph number in the Franchise Agreement. The Bankruptcy petition was filed prior to the expiration of the 30-day period in the notice of default. Therefore, the Franchise Agreements are subject to assumption or rejection under Section 365 in this case.

■ Assumption or rejection of an executory contract is subject to the Court's approval. 11 U.S.C. § 365(a). Generally, a Bankruptcy Court is to review a decision by a debtor in possession or a trustee to reject an executory contract, and order rejection if the rejection is based on the debtor or trustee's best business judgment in the circumstances. *In re Spectrum Information Technologies, Inc.,* 190 B.R. 741, 745 (Bankr. E.D.N.Y.1996) (citations omitted). The record here has clearly shown that neither the Franchisor nor the Franchisee is desirous of continuing the Franchise Agreements. Based on the Debtor's financial information that has been submitted in this matter, the Court has determined that the Debtor's operations as a Franchisee of Steak–Out Franchising, Inc. has produced a profit in only one of the six years that it has conducted busi-

ness under the Agreements. In the circumstances here, the Court accepts the Debtor's best business judgment that continued operations as a Franchisee under these Agreements is not in the best interests of this estate. Therefore, in the circumstances presented here, the Debtor's best business judgment and the best interests of the estate support rejection of these Franchise Agreements.

As a general principle, assumption or rejection by a debtor in possession or a trustee is an assumption or rejection of the entire executory contract. The Bankruptcy Code does not specifically allow for selective assumption or rejection. However, some Courts have recognized the concept that an executory contract may be made up of several related but distinguishable components. As such, some of the components may be severable from the whole document depending upon the circumstances that are presented in the record.

Covenants not to compete are frequently recognized as being severable, either by the parties' agreements or by operation of law. See *Stewart Title Guaranty Company v. Old Republic National Title Insurance Co.*, 83 F.3d 735, 739 (5th Cir.1996); *In re Covington Landing Limited Partnership*, 71 F.3d 1221 (6th Cir.1995); *In re Bridgeport Jai Alai, Inc.*, 215 B.R. 651 (Bankr.Conn.1997); *Moore, et al., v. Pollock (In re Pollock)*, 139 B.R. 938 (9th Cir. BAP 1992).

Other Courts have recognized that while the entire executory contract is rejected or assumed, rejection does not relieve all parties of their responsibilities to perform under a rejected executory contract.

In the matter being considered here, the covenants not to compete are enforceable notwithstanding rejection of the Franchise Agreements.

Rejection of an executory contract of the debtor constitutes a breach of such contract. 11 U.S.C. § 365(g). A claim for breach which arises as a result of rejection under Section 365 is treated as if the claim had arisen before the date of filing of the petition. 11 U.S.C. § 502(g). Therefore, "rejection operates as a breach of an existing

and continuing legal obligation of the debtor, not as a discharge or extinction of the obligation itself." In re Modern Textile, Inc., 900 F.2d 1184, 1191 (8th Cir.1990). Similarly, the liability of a guarantor for a debtor's obligations is not altered by rejection of the lease. *Id.* at 1191.

Generally, a covenant not to compete addresses the parties' actions after the executory contract has terminated, expired or not been renewed. In the matter being considered here, the covenant describes the parties as being the Franchisor, the Debtor (Franchisee), the Debtor's owners and all members of the owners' immediate families, and any guarantors of the Franchise Agreement. *See In re Modern Textile, Inc.*, 900 F.2d 1184, 1192 (8th Cir.1990); *In re Klein*, 218 B.R. 787, 790 (Bankr.W.D.Pa.1998).

Thus, the Debtor's rejection of a Franchise Agreement is a rejection and breach of the entire executory contract; however, the covenants not to compete remain effective and are otherwise enforceable. A discussion of the tools necessary to compel enforcement of the covenants, or the remedies available should there be non-compliance with the covenants is beyond the scope of the pleadings in these proceedings.

**IT IS ORDERED** that this matter is concluded; and that the Debtor's motion to reject the Franchise Agreements numbered 1701, 1703 and 1704 with Steak–Out Franchising, Inc. is granted; and that said Franchise Agreements are rejected; and that except for the Parties' agreements concerning the delivery of manuals, and the use of telephone numbers, all other requests are denied.