**SIR SPEEDY, INC., Appellant,**

v.

**John MORSE, Jr., Appellee.**

No. Civ.A. 00–40094–NMG.

United States District Court,
D. Massachusetts.

Dec. 29, 2000.

Lawrence G. Green, Perkins, Smith & Cohen, Boston, MA, for appellant.

David M. Nickless, Nickless & Phillips, Fitchburg, MA, for appellee.

## MEMORANDUM & ORDER

GORTON, District Judge.

The facts of this case are not in dispute. In 1985, Morse entered into a franchise agreement with Sir Speedy, a franchisor of printing and copying centers throughout the United States. Morse began to operate a Sir Speedy franchise store in Fitchburg, Massachusetts that offered copying and printing services. It was the only Sir Speedy location in north central Massachusetts.

The franchise agreement provided that Morse would operate the franchise store for a term of twenty (20) years. In paragraph 4.d Morse agreed that he would:

> not engage, directly or indirectly, during the term of this Agreement ... in the ownership or operation ... in any business which is the same or substantially similar to the business covered or contemplated in this Agreement.

Paragraph 7.c states that:

> In the event of termination of the Franchise hereunder, the Franchisee [Morse] shall not be associated directly or indirectly as employee, proprietor, stockholder, partner, agent or officer with the operation of any business competitive to the Sir Speedy System within a radius of five (5) miles of the subject's Center for a period of one (1) year.

On July 14, 1998, Morse filed a petition under Chapter 7 of the United States Bankruptcy Code. 11 U.S.C. § 101 *et seq.* Approximately one week prior to filing for bankruptcy protection, Morse removed all of the Sir Speedy signs from his store in Fitchburg and began operating under the name "Morse Printing". He did not change the telephone number which remained listed to Sir Speedy in the telephone book.

During the bankruptcy proceedings, Sir Speedy filed a motion to enforce the non-compete clause of a franchise agreement between Morse and Sir Speedy, or, alternatively, that Sir Speedy be granted relief from the Automatic Stay so that it might seek injunctive relief in the United States District Court for the District of Massachusetts. After a hearing on August 13, 1998, the Bankruptcy Court denied Sir Speedy's motion on the grounds that the right to enforce the non-compete agreement was a "claim" like any other to be pursued under § 101(5)(B) of the Bankruptcy Code. Sir Speedy appealed that decision to this Court.

On January 13, 2000 this Court reversed the determination of the Bankruptcy Court, holding that the breach of a non-compete agreement does not give rise to a right to payment and thus is not a "claim" under § 101(5)(B). This Court remanded the matter to the Bankruptcy Court for proceedings consistent with that opinion.

Sir Speedy then filed a Post–Appeal motion for relief from the Automatic Stay. After a hearing, on April 19, 2000 the Bankruptcy Court denied Sir Speedy's motion. It determined that Sir Speedy was not entitled to enforce the non-compete clause because the deemed rejection of the Franchise Agreement under bankruptcy law constituted a termination of all obligations under that agreement. Sir Speedy now appeals that determination.

Pending before this Court are appeal briefs filed by Sir Speedy and Morse and a reply brief filed by Sir Speedy.

## I. Discussion

### A. Standard of Review

■ When reviewing the decision of a Bankruptcy Court, a District Court applies a clearly erroneous standard to findings of fact and *de novo* review of questions of law. *In re Winthrop Old Farm Nurseries, Inc.,* 50 F.3d 72, 73 (1st Cir.1995). Conclusions of law are reviewed *de novo* and are set aside only when they are made in error or constitute an abuse of discretion. *In re DN Associates,* 3 F.3d 512, 515 (1st Cir. 1993).

### B. Whether "rejection" of a contract under 11 U.S.C. § 365(g) constitutes "termination" of that contract

The Bankruptcy Court found that, because the Chapter 7 Trustee had not taken any action to assume or reject the Franchise Agreement within 60 days of the date Morse filed his bankruptcy petition, the Franchise Agreement was rejected by operation of law on July 14, 1998, the date on which Morse filed his Chapter 7 petition. The Bankruptcy Court interpreted 11 U.S.C. § 365 to hold that the Trustee's rejection of the Franchise Agreement effectuated a termination of the Franchise Agreement immediately before the petition was filed on July 14, 1998. The Bankruptcy Court went on to find that because Morse's non-competition obligation ended one year later according to the terms of the contract, Sir Speedy's right to injunctive relief had expired.

■ As the term is used throughout 11 U.S.C. § 365, "rejection" refers to the debtor's decision not to assume an unexpired lease or executory contract. Section 365(g) states that the rejection of an executory contract or unexpired lease "constitutes a breach" except as provided in subsections (h)(1) or (i)(1). Those subsections apply to unexpired leases of real property and executory contracts for sales of real property and hence are inapplicable to this case which involves a non-competition provision in a franchise agreement.

■ The consequence that flows from the rejection of an executory contract is that the Bankruptcy Code treats the contract as if the debtor had in fact breached it just prior to bankruptcy. 11 U.S.C. § 365(g). Rejection does not cause a contract magically to vanish. The post-rejection rights and obligations of the debtor and the non-debtor are exactly the same as they would have been had the debtor first breached the contract and then filed for bankruptcy. *See* Jeffrey C. Sharer, *Noncompetition Agreements in Bankruptcy:*

*Covenants (Maybe) Not to Compete,* 62 U.Chi.L.Rev. 1549, 1553 (1995).

Courts have generally accepted the proposition that franchise agreements that have not been terminated as of commencement of a bankruptcy case are executory contracts under the Bankruptcy Code. *See Krebs Chrysler–Plymouth, Inc. v. Valley Motors, Inc.,* 141 F.3d 490, 496 (3d Cir.1998); *In re Steaks To Go, Inc.,* 226 B.R. 35, 37 (Bankr.E.D.Mo.1998); *In re Klein,* 218 B.R. 787 (Bankr.W.D.Pa.1998); *In re Printronics, Inc.,* 189 B.R. 995 (Bankr.N.D.Fla.1995).

Several circuits have held that the rejection of an executory contract is not the equivalent of termination of the contract but instead constitutes a breach. *See In re Columbia Gas System, Inc.,* 50 F.3d 233, 239 n. 8 (3d Cir.1995) (rejection under 11 U.S.C. § 365(g), appropriate when a contract is a liability to the bankrupt, is equivalent to a non-bankruptcy breach); *In the Matter of Austin Development Co.,* 19 F.3d 1077, 1082 (5th Cir.1994), *cert. den'd sub nom. Sowashee Venture v. EB, Inc.,* 513 U.S. 874, 115 S.Ct. 201, 130 L.Ed.2d 132 (1994) (rejection of a lease in bankruptcy is treated as a breach in order to preserve the rights of the party whose lease with the debtor has been rejected by providing a pre-petition claim); *In re Modern Textile, Inc.,* 900 F.2d 1184, 1191 (8th Cir.1990) (rejection by the bankruptcy trustee of a sublease "operates as a breach of an existing and continuing legal obligation of the debtor, not as a discharge or extinction of the obligation itself," and therefore the lessor's claim against the debtor for breach of the lease survives the trustee's rejection of the lease); *Leasing Service Corp. v. First Tennessee Bank Nat'l Ass'n,* 826 F.2d 434, 436–437 (6th Cir.1987) (rejection or assumption of an executory contract determines only the status of the creditor's claim, i.e., whether it constitutes a pre-petition obligation of the debtor for breach (if rejected) or is entitled to priority as an expense of administration of the estate (if assumed)).

■ In this case, neither Sir Speedy nor Morse contend that at the time of contracting they meant for the non-competition clause to be separate and apart from the Franchise Agreement. Instead, that clause is part of the Franchise Agreement, and Morse's rejection of the Franchise Agreement constitutes a rejection of the non-competition clause. *See In re Don & Lin Trucking Co., Inc.*, 110 B.R. 562, 566 (Bankr.N.D.Ala.1990); *In re Allain*, 59 B.R. 107, 109 (Bankr.W.D.La.1986).

In *In re Klein*, 218 B.R. 787 (Bankr. W.D.Pa.1998), the Bankruptcy Court addressed the issue currently before this Court. In that case, the debtor-franchisee filed for bankruptcy under Chapter 13 of the Bankruptcy Code and rejected the franchise agreement between it and Kwik–Kopy Corporation. Kwik–Kopy sought to enforce the non-competition provision contained within the franchise agreement. The Bankruptcy Court held that that provision remained effective, to the extent that it was enforceable under applicable state law, notwithstanding the rejection of the executory franchise agreement within which the provision was contained. *In re Klein*, 218 B.R. at 790–791.

In another case dealing with the rejection in bankruptcy of a franchise agreement, the Bankruptcy Court found that such rejection constituted a breach of the entire executory contract. *In re Steaks To Go, Inc.*, 226 B.R. 35, 38 (Bankr.E.D.Mo. 1998). The court held that despite the rejection of the entire agreement, the covenants not to compete contained in the agreement remained effective and enforceable. *Id.*

The Bankruptcy Court in *In re Don & Lin Trucking Co.*, 110 B.R. 562 (Bankr. N.D.Ala.1990), came to a similar conclusion. There, the court found that the rejection in bankruptcy by the debtor of an executory contract with a trucking company did not totally relieve the debtor of all obligations under the contract or limit the company to a claim for money damages. Instead, the court held that the debtor remained bound by the covenant-not-to-compete contained in the agreement which prohibited the debtor from transporting products of a competitor within the same geographic area for period of two years. *Id.* at 566, 568.

■ The rationale of the three cases just cited is persuasive. Although Morse, in rejecting the Franchise Agreement, also rejected the covenant not to compete, the very purpose of the covenant is to govern the relationship between the parties after the demise of the underlying contract. The Trustee's rejection of the Franchise Agreement did not, therefore, constitute a "termination" of that agreement.[1]

This Court has already held that Sir Speedy's right to enforce the non-competition provision of its Franchise Agreement is not a "claim" under § 101(5)(B) of the Bankruptcy Code. *See* January 13, 2000 Order (Docket No. 38, Case No. 98–45283). Sir Speedy is, therefore, now entitled to seek appropriate injunctive relief under that provision.

## ORDER

For the foregoing reasons, the April 19, 2000 Order of the Bankruptcy Court is **REVERSED** and the matter is **REMANDED** for proceedings consistent with this opinion.

So ordered.

---

1. Morse's argument concerning the lack of arms-length negotiation of the non-compete provision and the abandonment of the Franchise Agreement by both parties goes to the merits of the enforceability of the provision to be dealt with after relief from the Automatic Stay is granted.