**In re Sharon Y. ALONGI, Debtor.**

**No. 00–5–9646–SD.**

United States Bankruptcy Court,
D. Maryland,
at Baltimore.

March 9, 2001.

David Daneman, Bishop, Daneman & Reiff LLC, Baltimore, MD, for debtor.

Stephen A. Hecker, Saul Ewing LLP, Baltimore, MD, David S. Musgrave, Piper & Marbury, Baltimore, MD, for creditor.

### MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEBTOR'S REQUEST FOR DECLARATORY RELIEF

E. STEPHEN DERBY, Bankruptcy Judge.

The remaining issue for resolution is the effect under 11 U.S.C. § 365(d)(1) of the deemed rejection of the Chapter 7 Debtor's personal service contract with Respondent on Debtor's contractual obligation not to compete with Respondent. This issue is presented by Debtor's Request for Declaratory Relief and Respondent's Opposition to the Request. For the reasons stated below, the court will grant in part and deny in part Debtor's request.

### Contentions of the Parties.

Debtor, a physician, filed a voluntary Chapter 7 petition on August 3, 2000. At the time she was employed by Respondent, Family Medical Associates ("FMA"), pursuant to a written Physician Employment Agreement (the "Contract"). On October 18, 2000, Debtor filed a Motion to Reject Executory Contract (P. 13), requesting that the Contract be deemed rejected pursuant to 11 U.S.C. § 365(d)(1) because sixty (60) days had passed since the Order for Relief in the case, or in the alternative, moving to reject the Contract pursuant to § 365(a)[1]. Debtor alleged that as of the petition date the Contract, which contains a covenant not to compete (the "Covenant"), had not been fully performed and substantial obligations remained to be performed by both FMA and Debtor "such that failure of either party to complete performance would have constituted a material breach excusing the performance of the other party." Motion to Reject Executory Contract ¶ 4. Accordingly, Debtor asserted that the contract was executory and subject to rejection under § 365. Debtor further asserted the court should defer to her decision to reject the Contract because rejection was in her best interest. Id. ¶¶ 7–8. Specifically, Debtor argued that FMA was deducting large sums from her paycheck, and the Covenant was "burdensome to [her] future financial well-being"

---

**1.** All text references to § 365 in this opinion are to 11 U.S.C. § 365.

and would "significantly hamper[ ][her] fresh start." *Id.* ¶¶ 9–10.

Debtor also alleged that FMA requested she leave her office on September 25, 2000, from which she concluded that she had been "terminated." *Mot. To Rej.* n. 1. FMA did not cite a cause for terminating Debtor, and did not provide Debtor with the ninety (90) day notice required under the Contract. *Id.* Debtor noted that FMA denied it terminated Debtor, and instead FMA argued Debtor left voluntarily. *Id.* Debtor asserted that, "[t]o avoid a lengthy, costly dispute," she chose to resign. *Id.* Thus, she provided FMA with notice of termination of the contract by letter of September 29, 2000 to be effective December 28, 2000. *Id.; FMA's Exhibit No. 2; FMA's Memorandum in Opposition* ¶ 4.

FMA opposed Debtor's motion, asserting Debtor had no power to reject the Contract because, under § 365(a), only the trustee could assume or reject an executory contract. *Memorandum in Opposition* ¶ 2, 5. FMA also argued that an adversary proceeding, not a motion, was the appropriate vehicle through which to obtain the declaratory relief requested by Debtor. *Id.* ¶ 6. FMA supposed that Debtor wanted the court to determine the Covenant was no longer binding on Debtor. *Id.* ¶ 2. FMA urged the court to deny this request. FMA first argued Debtor ratified the Contract "by continuing to treat the Contract as effective, and by continuing to perform under it." *Id.* ¶ 7. Failing enforcement of the Contract under the theory of ratification, FMA asserted that, even if a rejection of the Contract was effective, the rejection only constituted a pre-petition breach of the Contract, and it did not affect the enforceability of the Covenant. *Id.* ¶ 10. FMA argued the Covenant was enforceable by injunction under § 18(a) of the Contract, such that the breach effective pre-petition did not give rise to a claim as defined by 11 U.S.C. § 101(5)(B). *Id.* ¶ 12.

Because only the Chapter 7 Trustee, and not a debtor, is given the right to reject an executory contract, the court denied Debtor's request to reject the Contract, without prejudice to her request for declaratory relief as to the substantive effect of § 365(d)(1) on Debtor's continuing obligations under the Contract. The court also determined Debtor's motion for declaratory relief was not required to be brought as an adversary proceeding by Fed.R.Bankr.P. 7001(9), because the request did not fall within the categories of requests specified under that rule.

In response to the court's order, and at the court's invitation, Debtor filed a Reply to Respondent's Opposition. Within the reply, Debtor clarifies her requested relief, explaining she seeks a determination "that, because sixty (60) days have passed since the Order for Relief in this case, during which time the Trustee did not seek the consent of the Debtor to assume the Contract, pursuant to Section 365(d)(1), the Contract should be deemed rejected." *Reply to Respondent's Opposition* ¶ 3. Debtor asserts the Contract is rejected because it was not expressly assumed, and the Trustee "has indicated her intent that the Contract be rejected." *Id.* ¶ 4.

Debtor seeks a further determination that "the rejection of the Contract expressly discharges all of her obligations thereunder," specifically the Covenant and the provision of the Contract by which Debtor agreed to pay malpractice tail premiums upon termination of the Contract. *Id.* ¶¶ 5, 7. She contends the rejection of the Contract constitutes a pre-petition breach, and her request for declaratory relief can be viewed as an anticipatory breach of the Covenant. *Id.* ¶ 9. Debtor asserts the pre-petition breach gives rise to a claim for damages which will be dis-

charged in Debtor's bankruptcy because the rejection of the Contract results in termination of the Covenant. *Id.* ¶ 10. In addition, Debtor contends that the provision in the Contract premium tail coverage provision gives rise to a right to payment that will be discharged in Debtor's bankruptcy. *Id.* ¶ 12.

FMA replied in a Supplemental Memorandum in Opposition to Debtor's Request for Declaratory Relief. It asserts that upon termination of the Contract, Debtor became liable to pay certain premiums for medical malpractice insurance tail coverage, and she also became obligated not to compete with FMA under the Covenant. *Supplemental Memorandum* ¶ 7. FMA reiterated its assertions that Debtor ratified the contract by her post-petition behavior (*id.* ¶¶ 9, 10), and that the Covenant is not a "claim" as defined in 11 U.S.C. § 101(5) subject to discharge. *Id.* ¶¶ 11–16. Further, FMA argues that Debtor's liability for medical malpractice tail insurance is a post-petition claim, and it is therefore not subject to discharge. *Id.* ¶ 20–22.

### *Ratification*

■ Although urging the court to determine that Debtor has ratified the Contract, FMA offers no controlling authority on which to base such a finding. Debtor asserts she had no authority to assume the contract and thus could not have ratified it. However, she misses the point: FMA does not suggest Debtor *assumed* the contract, but rather that she ratified it by her post-petition behavior. In *In re El Paso Refinery, L.P.* the bankruptcy court determined, based on a survey of case law, that "[f]rom the moment of filing to the moment of assumption or rejection, the non-debtor party is held to be barred from enforcing the contract and its terms." *In re El Paso Refinery, L.P.*, 220 B.R. 37, 48 (Bankr. W.D.Tex.1998) (citations omitted). The court held, regardless of whether a debtor performs under the contract, the contract can be enforced against the non-debtor party, and the non-debtor party is bound by its contractual obligations until the contract is rejected. *Id.* at 43–44, *citing e.g. NLRB v. Bildisco and Bildisco*, 465 U.S. 513, 531–33, 104 S.Ct. 1188, 1199, 79 L.Ed.2d 482 (1984); *United States Postal Service v. Dewey Freight System, Inc.*, 31 F.3d 620, 624–25 (8th Cir.1994); *In re Metro Transp. Co.*, 87 B.R. 338, 339 (Bankr.E.D.Pa.1988).[2]

Even if Debtor performed under the Contract post-petition, she did no more than attempt to enforce the Contract against FMA. Debtor has thus done no more than she is permitted to do. The court remains unpersuaded that Debtor's alleged post-petition conduct rises to the level of ratification.

### *Rejection under 11 U.S.C. § 365*

Section 365(a) permits a trustee, "subject to the court's approval, [to] assume or

---

**2.** The *El Paso Refinery* court noted to the extent a non-debtor performs on an executory contract post-petition, the non-debtor is entitled to a post-petition administrative claim for the reasonable value of such performance. *In re El Paso Refinery, L.P.*, 220 B.R. at 43, *citing NLRB v. Bildisco and Bildisco*, 465 U.S. at 531, 104 S.Ct. at 1199; *United States Postal Service v. Dewey Freight System, Inc.*, 31 F.3d at 625. In contrast, the bankruptcy court also noted in the context of a post-petition breach of an executory contract, "[a] post-petition breach ... might afford sufficient 'cause' to warrant the court's intervention, but the correct form of adequate protection to be offered by the estate in every executory contract case will always be an offer to assume or reject the executory contract by a date certain ... [because] if the estate decides to reject the contract, then any outstanding defaults, including those generated post-petition, will be converted into a pre-petition unsecured claim, equal in priority of distribution with other unsecured creditors." *In re El Paso Refinery, L.P.*, 220 B.R. at 45.

reject any executory contract or unexpired lease of the debtor." If the Chapter 7 trustee "does not assume or reject an executory contract ... of the debtor within 60 days after the order for relief, or within such additional time as the court, for cause, within such 60–day period, fixes, then such contract ... is deemed rejected." 11 U.S.C. § 365(d)(1). When an executory contract is rejected, the rejection "constitutes a breach of such contract ... (1) ... immediately before the date of the filing of the petition; ...". *Id.* at § 365(g)(1). See *also, In re Printronics, Inc.,* 189 B.R. 995, 1000 (Bankr.N.D.Fla. 1995).

There has been some divergence of opinion over the effects of rejection under § 365, especially in the context of covenants not to compete. Specifically, the issues are whether and how the rights and obligations of a debtor and a non-debtor survive rejection of the underlying executory contract.

■ A sound analysis of § 365 that charts a course for resolving the issue before the court has been made by Professor Michael T. Andrew. Andrew, Executory Contracts in Bankruptcy: Understanding "Rejection", 59 U.Colo.L.Rev. 845 (1988). Rejection of an executory contract, because it constitutes a breach, does not terminate the contract. Accordingly, the rights and obligations of the parties remain intact after a rejection because "[r]ejection does not change the substantive rights of the parties to the contract, but merely means the bankruptcy estate itself will not become a party to it." *Id.* at 848–49.[3]

■ Rejection can be described functionally as non-assumption, such that a trustee's decision not to assume an executory contract means only that the asset, i.e. the continued performance of the non-debtor, will not be a part of the bankruptcy estate. Once the determination not to assume a contract has been made, and as set out in § 365(g), the contract is treated as if it had been breached just before the bankruptcy petition was filed. "The liabilities are not repudiated; to the contrary, as the rejection-as-breach doctrine is designed to insure, the contract or lease liabilities remain intact after rejection and give the non-debtor party a claim in the distribution of the estate." Andrew at 883. In this way, the non-debtor is treated no differently than other claimants, and the obligations owed to the non-debtor do not disappear. All monetary claims by the nondebtor party whether existing or arising from the rejection breach, are subject to discharge, which furthers the debtor's fresh start. If a contract related to property is rejected, i.e. not assumed, the contract is deemed breached; but the estate gains the asset, i.e. a property interest, only to the extent the debtor had rights in the contract, and subject to any interests existing pre-bankruptcy. *Id.* at 908.

■ A purpose of § 365 is to avoid giving administrative priority to executory contracts that are not a good bargain for a debtor's estate. Andrew at 925. "In that sense, rejection—or more accurately, the underlying rule that the estate does not become obligated on contracts and leases without assumption—is designed to preclude third parties from having specific performance rights against the estate on a contract which the estate declines to assume." *Id.* Thus, rejection cuts off only those rights against the estate that are dependent upon the estate itself being obli-

---

**3.** The problem in understanding 11 U.S.C. § 365, as explained by Professor Andrew, is caused by trying to attach an inflated meaning to "rejection", because there is no contractual counterpart to "rejection."

gated on the contract. *Id.* Specifically, as to whether a non-debtor may enforce a covenant not to compete, the "determinative issue is the impact of the debtor's discharge." *Id.* at 927.

■ As stated by Professor Andrew, "rejection does not cancel, repudiate, or terminate contracts; ... no preliminary test of the 'executoriness' of a contract is necessary as a precondition to its rejection; and ... rejection does not, like bankruptcy law's 'avoiding powers,' terminate state-law rights in or to specific property." Andrew, Executory Contracts Revisited: A Reply to Professor Westbrook, 62 U.Colo.L.Rev. 1, 2 (1991).[4] Rather, rejection creates a deemed breach of the contract as of the date of bankruptcy, so that, to the extent the breach creates a claim in the non-debtor party, this claim can be processed through the bankruptcy proceeding. *Id.* at 8. "[T]he enforceability of a covenant not to compete against a debtor does not turn on whether the contract containing the covenant is rejected, because rejection does not terminate the contract." *Id.* at 18. Instead, the enforceability of such a covenant is dependent on whether the debtor's obligation under the covenant is dischargeable. *Id. Cf. Stewart Foods, Inc. v. Broecker,* 64 F.3d 141, 144 (4th Cir.1995) ("The rejection or assumption of a contract does not determine whether a claim exists, but whether any claim that does exist is treated as a prepetition obligation of the debtor or as an administrative expense entitled to highest priority." "The rejection of an executory contract constitutes a breach of the contract, and a party's damages resulting from that rejection are treated as a prepetition claim and receive the priority provided to general unsecured creditors." *citing,* 11 U.S.C. §§ 365(g)(1), 502(g)); *Sir*

*Speedy, Inc. v. Morse,* 256 B.R. 657 (D.Mass.2000) (Rejection does not cause a contract magically to vanish. The post-rejection rights and obligations of the debtor and the non-debtor are exactly the same as they would have been had the debtor first breached the contract and then filed for bankruptcy).

■ Professor Andrew posits that there should not be a blanket rule prohibiting specific performance of a contract because bankruptcy has intervened. The argument that there is no specific performance allowed in bankruptcy is an inaccurate generalization "of the fact that the estate itself is not, absent assumption, bound by the debtor's contracts." Andrew, Revisited at 28. Because the bankruptcy estate is not a party to an unassumed contract, there is neither a right of specific performance against the estate nor a right to recover damages against the estate, apart from the claims process. *Id.* at 28.

■ The rights and obligations of a debtor and a non-debtor party to an executory contract are essentially the same after rejection of the contract as they would have been if the contract had been breached by the debtor prepetition. See Jeffrey C. Sharer, Noncompetition Agreement in Bankruptcy: Covenants (Maybe) Not to Compete, 62 U.Chi.L.Rev. 1549, 1553 (1995). Where it exists, a monetary remedy is generally favored under the Bankruptcy Code over an equitable one. *Id.* Thus, a claim includes a "right to equitable remedy for breach of performance if such breach gives rise to a right to payment." 11 U.S.C. § 101(5)(B). The bankruptcy court must estimate for allowance as an unsecured claim "any right to payment arising from a right to an equitable remedy for breach of performance." *Id.* at

---

4. For criticism of Professor Andrew's approach, see Jay Lawrence Westbrook, A Func- tional Analysis of Executory Contracts, 74 Minn.L.Rev. 227 (1989).

§ 502(c)(2). However, if Congress had intended that all equitable remedies be dischargeable, it could have so provided, rather than limiting the "bankruptcy court's estimation power to equitable remedies that give rise to rights to payment." Sharer at 1560.

 Because a rejected contract is treated as breached and not as destroyed, it is necessary to analyze the respective rights and obligations of Debtor and FMA that arise as a result of the effective breach. These rights arise under state law and the Contract itself. *See e.g. County Commissioners of Caroline County, Maryland v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 747 A.2d 600 (2000) (Concluding that where a contract covers certain subject matter, the parties are limited to the remedies provided in the contract, and cannot resort to theories dependent on quasi-contract or unjust enrichment); *National Fire Insurance Company of Hartford v. Tongue, Brooks & Company, Inc.*, 61 Md.App. 217, 224, 486 A.2d 212, 216 (1985) ("The rights of the parties would be governed by that contract"); *Bel Pre Medical Center, Inc. v. Frederick Contractors, Inc.*, 21 Md.App. 307, 320 A.2d 558 (1974) ("When the parties have agreed to submit any and all controversies arising out of the contract to an arbitrator, all issues other than those expressly and specifically excluded must be submitted to arbitration").

### Rejection of the Contract

 The Chapter 7 trustee did not assume the Contract within sixty (60) days of the date on which Debtor filed her voluntary bankruptcy petition; and the court did not grant additional time, during those sixty days, for the trustee to assume or reject the Contract. Accordingly, pursuant to § 365(d)(1), the Contract is deemed rejected.

### The Rights and Obligations Under the Contract

 Under the Contract, the Covenant and the medical malpractice insurance provision are only activated "[u]pon the termination of [the Contract], however such termination is effected, whether by [Debtor] or [FMA], with or without Cause, or due to the expiration or non-renewal" of the Contract. *Contract*, § 15. According to the Termination provision of the Contract, a non-defaulting party may, upon ten days prior written notice, terminate the Contract for "Cause" as defined by § 14(a) of the Contract. Included in the definition of "Cause" is the "[m]aterial breach or default of either party hereunder which shall remain uncured at the expiration of the ten (10) day notice period referred to above." *Contract*, § 14(a)(ix). Debtor has not established, however, that FMA terminated the Contract for Cause. Alternatively, the Contract provides that either party may terminate the Contract without Cause upon ninety days written notice to the other party. *Contract*, § 14(b).

The rejection of the Contract did not terminate the Contract; rather, upon rejection, the Contract is treated as if it had been breached immediately before Debtor filed her bankruptcy petition. Under the terms of the Contract, such breach did not activate the Covenant or the malpractice tail insurance provision, those provisions are activated only upon termination of the Contract.

Here, because there was an effective breach of the Contract as of the date Debtor filed her bankruptcy petition, August 3, 2000, FMA as the non-defaulting party, had the option of terminating the Contract under § 14(a)(ix). FMA did not exercise this option. Termination of the Contract was not initiated until Debtor notified FMA of her resignation post-petition by letter of September 29, 2000. *FMA's Exhibit No. 2.* According to the

letter, the resignation and termination of the Contract were to be effective on December 28, 2000, or ninety days from the date of the letter. Therefore, the Covenant and the malpractice tail insurance provision were triggered as of that date, December 28, 2000. Because these provisions were activated post-petition, any claims arising from the provisions are post-petition claims and not subject to Debtor's discharge. The Covenant may be enforced or damages awarded as permitted by state law. Likewise, the medical malpractice tail insurance provision did not give rise to a monetary claim that is dischargeable in this case, and it may be enforced against the Debtor. Accord, *In re Weinstock*, 1998 WL 401521 (Bankr. E.D.Pa.1998).

The fact pattern presented in this case is different from *Ohio v. Kovacs*, 469 U.S. 274, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985) where the debtor's obligation to clean up hazardous waste had been fixed prepetition, and what the Court found was sought from the debtor was money to defray clean up costs. Since the equitable obligations in *Kovacs* had been converted into a monetary claim, it was subject to discharge. *Id.*, 469 U.S. at 283, 105 S.Ct. at 710. The Supreme Court in *Kovacs* expressly cautioned, *inter alia*, that "we do not address what the legal consequences would have been had Kovacs taken bankruptcy *before* a receiver had been appointed and a trustee had been designated with the usual duties of a bankruptcy trustee...." *Id.*, 469 U.S. at 284, 105 S.Ct. at 710. (Emphasis supplied.)

In summary, the deemed rejection of the Contract under § 365(d)(1) constituted a breach of the contract, but it did not terminate the Contract. The Covenant and the medical malpractice tail insurance provision survived. When the Contract was terminated by the Debtor post-petition, these clauses were triggered. Because they were triggered by post-petition actions of the Debtor, they do not give rise to prepetition claims, and they are not subject to discharge in this case. Consequently, Debtor's request that the court declare her obligations under the Covenant and the malpractice insurance provision to have been discharged will be denied.

Therefore, it is, this _____ day of March 2001, by the United States Bankruptcy Court for the District of Maryland,

ORDERED AND DECLARED, that the Physician Employment Agreement is rejected; and it is further

ORDERED, that Debtor's request for a declaration that any and all obligations arising from the covenant not to compete be discharged in this bankruptcy case is DENIED; and it is further

ORDERED, that Debtor's request for a declaration that any and all obligations arising from the malpractice tail insurance provision in the Physician Employment Agreement be discharged in this bankruptcy case is DENIED.